## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| SHAUNA N. SEELY aka SHAUNA N. SHELBURNE, JOHN SHELBURNE, and VICTORIA G. FARRINGTON,<br><br>Plaintiffs,<br><br>vs.<br><br>DESERET FIRST FEDERAL CREDIT UNION,<br><br>Defendant. | MEMORANDUM  DECISION AND ORDER DENYING PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER<br><br>Case No. 2:09CV775DAK |

This matter is before the court on the Plaintiff Shana Seely's Motion for Preliminary Injunction, filed September 16, 2009, and Motion for Temporary Restraining Order and Preliminary Injunction, filed October 8, 2009.[1]  On December 2, 2009, the court held a hearing on Plaintiff's motions.  At the hearing, Defendant was represented by Ryan Frazier.  Counsel for Plaintiffs did not appear.  The court, therefore, did not hear arguments on the motion and advised Mr. Frazier that the motions would be taken under advisement.  Based on the briefing filed by the parties and the law and facts relevant to the pending motions, the court enters the following Memorandum Decision and Order.

---

[1]      The Motion for Preliminary Injunction, filed on September 16, 2009, and the Motion for Temporary Restraining Order, filed October 8, 2009, state that only Plaintiff Shauna Seely/Shelburne is moving for the preliminary injunction and the motion for temporary restraining order.  Plaintiffs do not explain why only one of the three Plaintiffs is moving for injunctive relief.  The court will refer to only one Plaintiff when addressing the pending motions, but Plaintiffs in the plural when referring to certain factual events relevant to the motions.

## BACKGROUND

In 2006, Shana Seely[2] obtained a construction loan from Deseret First to build a residential home at 5097 North Eagle View Drive, in Lehi, Utah.  Shana and her mother-in-law collateralized the loan with the Lehi property and the mother-in-law's home in California.  On two occasions, additional funds were needed to complete the home.  When the construction loan came due on January 5, 2008, Shana was not able to pay off the loan.

The three Plaintiffs in this case approached Deseret First about a "take-out loan" for permanent financing on the home.  Plaintiffs agreed to add two more properties as collateral, and Deseret First and Plaintiffs executed two separate loans for the financing of the Lehi property to replace the construction loan.  The first loan was for $635,000, and was secured with the Lehi property, a second position on a Salt Lake property, and a second position on a South Jordan Property.  The second loan was for $202,000, and was secured by a second position on the mother-in-law's California property.

The closing, funding, and settlement for both loans occurred on the same day in July, 2008.  In connection with the closing on the first loan, Shana Seely and John Shelburne signed a "Notice of Right to Cancel," and Shana Seeley signed a "Note, Security and Disclosure Agreement" and a "Good Faith Estimate."  At the closing of the second loan, all of the Plaintiffs signed a "Notice of Right to Cancel," a "Note, Security and Disclosure Agreement," and a "Good Faith Estimate."

After executing the loans, Plaintiffs failed to make the monthly payments.  Deseret First

---

[2]  Although the court caption refers to Plaintiff as Shauna, the loan documents refer to Plaintiff as Shana.  It is unclear which is correct.  The court will refer to Plaintiff as Shana despite the court caption referring to her as Shauna.

exercised its rights under the two loans and initiated foreclosure proceedings against the Lehi property by recording the requisite notices of default and sale under Utah law.  On July 31, 2009, Deseret First purchased the Lehi property at the foreclosure sale.

In preparing the house for resale, on August 24, 2009, Deseret First sent a locksmith to replace a temporary security lock with one more consistent with the home's architecture.  The locksmith returned and reported that several people were occupying the property.  On August 26, 2009, Deseret First sent an employee to the home accompanied by a Lehi City police officer. They met a number of young adults who claimed to have moved in on August 21, 2009.  The young adults indicated that they had not yet signed a lease or paid a deposit.  The Deseret First employee explained the status of ownership to the young adults and asked that they vacate the premises immediately.  The individuals agreed but asked that they be given time to relocate. They were given until the end of the day on August 29, 2009.

On August 28, 2009, Deseret First called one of the individuals to verify that they would be out the next day.  The individual stated that they no longer intended to vacate the property because they had been advised by the attorney representing the "true owner" of the home that Deseret First had no right to require them to move.  Shortly after this conversation, attorney Robert Culas contacted Deseret First and stated that Deseret First had no right to require the individuals at the property to vacate.

On August 28, 2009, Seely served Deseret First with a Notice of Rescission pursuant to the Truth in Lending Act (TILA) its implementing regulation, Regulation Z, and the Home Equity Protection Act.  On that same date, Plaintiffs also filed the present action in this court alleging violations of TILA and the Home Equity Protection Act.

Under TILA, 15 U.S.C. § 1635(a), a person in certain secured transactions involving

property which is to be used as the principal dwelling of the person may rescind the transaction

until midnight of the third business day following the consummation of the transaction.  Under

section 1635(f), an "obligor's right of rescission shall expire three years after the date of

consummation of the transaction or upon the sale of the property, whichever occurs first,

notwithstanding the fact that the information and forms required under this section or any other

disclosures required under this part have not been delivered to the obligor."  *Id.* § 1635(f).  Under

Subsection 1635(b), "[w]hen an obligor exercises his right to rescind under subsection (a) . . ., he

is not liable for any finance or other charge, and any security interest given by the obligor,

including any such interest arising by operation of law, becomes void upon such rescission."  *Id.*

§ 1635(b).

Approximately two weeks after Plaintiff's filed this action, on September 11, 2009,

Deseret First filed an eviction action in Fourth District Court in Utah County, State of Utah.

Plaintiff then filed her present motion for preliminary injunction on September 16, 2009.  On

October 6, 2009, the state court entered an Order of Restitution ordering Plaintiffs to turn over

possession of the property to Deseret First. On October 8, 2009, Plaintiff filed a First Motion for

Temporary Restraining Order in this court.  That motion is substantially similar to Plaintiff's

previous Motion for Preliminary Injunction.

## DISCUSSION

### Plaintiff's Motion for Preliminary Injunction and Motion for TRO

Because of the similarities between Plaintiff's two motions, the court will address them

together.  In both motions, Plaintiff asks the court to enjoin Deseret First from taking possession

of the house until this case is resolved.  To obtain preliminary injunctive relief, Plaintiff must

show: (1) a substantial likelihood of success on the merits; (2) irreparable harm if the injunction is not issued; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the defendant; and (4) the injunction will not adversely affect the public interest. *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067 (10th Cir. 2009). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Greater Yellowstone Coal v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003). Deseret First argues that Plaintiff cannot meet the "clear and unequivocal" burden for a preliminary injunction.

### 1. Likelihood of Success on the Merits

Plaintiff argues that under TILA, 15 U.S.C. § 1635(a) and (f), she had three years to rescind her loan if the lender failed to make disclosures as to the interest rate, the actual cost of the loan, the imposition of points and fees in excess of those allowed by regulation, or the right to cancel the loan and to provide two copies of the form to exercise that right. Deseret First argues that Plaintiff cannot demonstrate a substantial likelihood of success on the merits because all three Plaintiffs signed acknowledgments of receipt of the disclosures they claim were not made at the closing on the loans.

Shana Seely and John Shelburne signed the Notice of Right to Cancel on the first loan. Shana Seely signed and received copies of the Loan Disclosure Agreement and the Good Faith Estimate on the first loan. All three Plaintiffs received and signed these same documents with respect to the second loan. Plaintiff claims that even if she did execute the documents, it only creates a presumption that she received notice. The issue is ultimately a jury question. This argument, however, fails to acknowledge that Plaintiff is required to demonstrate a substantial likelihood of success on the merits.

5

Plaintiff also asserts that she timely served Deseret First with a Notice of Rescission. And, having exercised that right of rescission, she claims that Deseret First no longer has a lien on the property.  But Plaintiffs' claims are time barred.  Under TILA, the "right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first."  15 U.S.C. § 1635(f).  If Plaintiffs had any right to rescind, such rights expired on July 31, 2009, when the property was sold at the foreclosure sale.  It is well established that "a foreclosure sale terminates any unexpired right to rescind."  *Worthy v. World Wide Financial Serv., Inc.*, 347 F. Supp. 2d 502, 506 (E.D. Mich. 2004).  It is irrelevant under Section 1635(f) whether the sale is voluntary or involuntary.  *Id.*; *Walker,* 232 B.R. 725, 732 (Bankr. N.D. Ill. 1999).  Plaintiff's Notice of Rescission to Deseret First is not dated until August 28, 2009, nearly a month after the foreclosure sale.

In addition, Section 1635 expressly does not apply to residential mortgage transactions. Under Section 1635(e)(1)(A), it states that this section does not apply to "a residential mortgage transaction as defined in section 1602(w) of this title."  15 U.S.C. § 1635(e)(1)(A).  Section 1602(w) states that the term "'residential mortgage transaction' means a transaction in which a mortgage, deed of trust, . . . or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  The TILA Comptroller Handbook states that "transactions exempt from the right of rescission include residential mortgage transactions and refinancing or consolidations with the original creditor where no 'new money' is advanced."  "The congressional purpose in creating the statutory rescission right in the first place was to protect homeowners from certain sharp practices of home improvement contractors . . . by creating a rescission right for home improvement loans that were secured by residential mortgages on existing dwellings."  *N.C.*

*Freed Co. Inc v. Board of Governors of Federal Reserve System*, 473 F.2d 1210, 1214-15 (2d Cir. 1973).

Plaintiffs have no rescission rights because they were financing the acquisition of the property when they obtained permanent financing to replace the construction loan, which is excepted from Section 1635. Moreover, Deseret First states that it provided the disclosures in this case only out of an abundance of caution.

Plaintiff further contends that Deseret First ignored another basis under TILA for rescission in connection with judicial and nonjudicial foreclosure. Under Section 1635(i), TILA addresses rescission rights in foreclosure: "(1) Subject to the time period provided in subsection [f] of this section, in addition to any other right of rescission available under this section for a transaction, after the initiation of any judicial or nonjudicial foreclosure process on the primary dwelling of an obligor securing an extension of credit, the obligor shall have a right to rescind the transaction equivalent to other rescission rights provided by this section if (A) a mortgage broker fee is not included in the finance charge in accordance with the laws and regulations in effect at the time the consumer credit transaction was consummated; or (B) the form of notice of rescission for the transaction is not the appropriate form of written notice published and adopted by the Board or a comparable written notice, and otherwise complied with all the requirements of this section regarding notice.

Plaintiff argues that this provision invokes an additional right to rescind, subject only to the three-year limitation in subsection (f) and the mortgage broker fee is not included in the finance charge or the form of notice is not the appropriate form. Not only do none of the provisions of Section 1635 apply to this loan, Plaintiff again fails to recognize that even if it did, the time limitations imposed on Section 1635(f) would require the notice of rescission to occur

before the foreclosure sale.

Accordingly, the court concludes that Plaintiff cannot demonstrate a substantial likelihood of success on the merits in order to meet the burden for obtaining a preliminary injunction.

### 2. Irreparable Harm

Plaintiff further contends that irreparable harm to her cannot be disputed if she is dispossessed of the home.  "[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements of the issuance of the injunction will be considered."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).

Plaintiff's claimed imminent harm is the loss of possession of the home.  But the foreclosure sale has already occurred and Plaintiffs already lost the legal right to possess the property.  The harm is not imminent, it has passed.  The injunctive relief sought would change, rather than preserve, the status quo.

Plaintiff also contends that her statutory rescission right will be rendered useless if she loses possession.   Under TILA, she is allowed to tender the reasonable value and keep the home. This demonstrates why the rescission right under TILA expired at the foreclosure sale.  If the amount due was to be tendered to remain in possession of the property, it should have occurred prior to or at the time of the sale.  Deseret First is now the lawful owner of the property.  The court, therefore, concludes that Plaintiff cannot establish irreparable harm because the property has already been foreclosed and sold.

**3.  Other Factors**

Because Plaintiff has failed to meet the first two factors for the issuance of preliminary injunctive relief, the court does not need to address the remaining factors.  Accordingly, the court finds no basis for granting Plaintiff's Motion for Preliminary Injunction or Motion for Temporary Restraining Order.

**CONCLUSION**

Plaintiff's Motion for Preliminary Injunction or Motion for Temporary Restraining Order are DENIED

DATED this 10th day of December, 2009.

BY THE COURT:

DALE A. KIMBALL,
United States District Judge